# Nicholson v. Kentucky Mine Supply Co.

Sept. 26, 1941.

W. T. Davis and E. P. Nicholson, Jr., for appellant.

Tye, Siler, Gillis & Siler for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellee, Kentucky Mine Supply Company, a corporation with principal office in Harlan, purchased 50 shares of its stock which had been pledged by the appellant, Jessamine R. Nicholson, to secure her note of $3,500, this note and the stock being held at the time of the sale by the Commercial Bank and Trust Company at Middlesboro. This action in equity was instituted by the appellant against appellee to set aside the sale on the ground of fraudulent representations made during the negotiations and from a judgment dismissing the petition this appeal is prosecuted.

The Citizens Bank and Trust Company was the owner/ of 373 shares of stock in the appellee company and was also the owner of the note of $3,500 executed by appellant secured by the pledge of 50 shares of stock owned by her. That bank became insolvent and its assets, including the 373 shares and the note secured by the pledge of the 50 shares, were purchased by Commercial. It appears that during the course of the liquidation of the Citizens Bank A. T. Siler, a director of appellee company, arranged to purchase the stock from Commercial at $50 per share after it should acquire the assets of the defunct Citizens Bank but after the pur-

chase of these assets by Commercial the transaction was not consummated although the appellee company was desirous that it should be.

In the early part of the year 1935 efforts were made by Commercial to sell the stock to appellee company at $75 per share but these offers were declined. On August 17, 1935, Gaius Whitfield, cashier of Commercial, wrote a letter to A. F. Whitfield, an officer and director of appellee company, stating that the board of directors of Commercial had made an offer to sell the stock to appellee for $75 per share which had been declined. This letter invited an offer for the stock to be submitted to the board. Subsequent correspondence arranged for a meeting between Mr. Siler and the board of directors of Commercial to attempt to get together on a price. Accordingly in September, 1935, Mr. Siler and U. G. Brummett, another director in appellee company, met in Middlesboro with a committee of directors of Commercial. E. P. Nicholson, appellant's husband, was a director of Commercial and was present at this meeting representing Commercial and also his wife as to her interest in the 50 shares of pledged stock.

It appears from the uncontradicted testimony of Mr. Siler and Mr. Brummett that at the beginning of the conference the stock was offered to appellee at $70 per share, this offer being countered by an offer of $65 per share by appellee. The conference adjourned at noon with a proposition by Commercial to sell the stock for $67.50 per share provided appellee company would also purchase the 50 shares of Mrs. Nicholson pledged to Commercial. At noon Mr. Siler called other officials of appellee company and secured authority to consummate the trade on this basis which was done.

Allegations of the petition, supported by proof, and forcefully urged in appellant's brief are that false representations were made by Mr. Siler at the conference to the effect 1) that the business of the corporation had "slacked down" or fallen off in recent months, 2) that he did not know when, or whether, the company would ever pay a dividend, and 3) that the real estate, furniture and fixtures of the corporation at Middlesboro and Harlan were carried on the books at approximately $136,000 and that the corporation was facing a big loss thereon since these items were worth far less than this

amount, whereas, in fact, a reserve for depreciation on these items amounting to $65,000 had been set up on the books.

Much evidence was introduced and elaborate and forceful argument is made to the effect that representations made by Mr. Siler were false. It is shown, for instance, that for the year 1935 the corporation earned more than $50,000 and that approximately one-half of this sum was earned in that year prior to the stock sale and that therefore the business of the corporation had not declined but was on the increase since it earned only $21,000 in the year 1934. A memorandum is also filed by Mr. Siler, which he had with him when speaking of the loss to be suffered by the corporation on its real estate, furniture and fixtures—this memorandum failed to show that a $55,000 reserve for depreciation was carried on the books.

It is shown that in December, 1935, several months after the sale, the company paid a dividend of 8 percent and that within a period of less than 18 months from the sale dividends aggregating 38 percent were declared and paid. This situation provided a fertile field for a lawsuit, of course. It may be added, however, that it appears rather definitely that the great increase in the company's earnings was largely due to a sudden turn for the better taken by the coal industry. The appellee company explains that the declaration of such large dividends in 1936 was also partially due to the federal law which became effective that year, imposing heavy taxes on undistributed profits.

However, we do not find it necessary to enter into a detailed discussion of the evidence on this point and determine whether or not false representations were made since the true picture of the transaction, as we see it from the evidence, is that if any false representations were made by the corporation's agent in the purchase and sale transaction the appellant's husband acting as her agent was not thereby induced to sell the stock—in short, he did not act in reliance upon any false representations but upon his own initiative, information and knowledge.

It is conceded by appellant that although false, material representations were made to her husband and agent, which were known by appellee's agent to be false,

and that they were made with intention to induce appellant to act, nevertheless her agent must in fact have believed and relied upon such statements and representations and must have been induced thereby to sell the stock. This principle of law is so well settled as hardly to require citation of authority but some of the numerous cases in our court so holding are Livermore v. Middlesboro Town-Lands Co., 106 Ky. 140, 50 S. W. 6; Crescent Grocery Co. v. Vick, 194 Ky. 727, 240 S. W. 388; Dennis v. Thomson et al., 240 Ky. 727, 43 S. W. (2d) 18.

The appellant's husband and agent acting for her in the sale of this stock is a lawyer of ability, as well as a banker well versed in business affairs and bookkeeping. He knew the past history of the stock, knew the amount of dividends paid in previous years, in particular that no dividend was paid in 1932 and 1933 and that a 7 percent dividend was paid in 1934. He was necessarily more or less well versed in the affairs of the corporation. He had attended, in February, 1934, a stockholders' meeting in Harlan where he learned that the book value of the stock was then $109. Mr. J. G. Erwin, General Manager of appellee, testified that at this meeting Mr. Nicholson and each of the other stockholders was furnished with the corporation's financial statement and that this statement showed the fixed assets of the company and the amount at which they were carried on the books, showing also the reserve for depreciation on furniture and fixtures. It is most improbable that a stockholder of the intelligence and type of Mr. Nicholson did not at that meeting examine the company's financial statement. The fact that the stock was offered at the committee meeting between the Bank and Mr. Siler at $70 per share before any representations or statements were made and countered by an offer of $65 per share, eventuating in a compromise between these two positions of $67.50 per share presents a situation giving every indication that the parties had made up their minds from information acquired by them as to the value of the stock before any representations were made. The false representations, if made, could have had no other effect than to induce the directors of the bank and Mr. Nicholson to accept a price of $2.50 per share less than the price they had fixed before any representations were made, a reduction of 3.5 percent from the original price set by appellant's husband and other directors of Commercial.

Without detailing further facts, our conclusion from the entire evidence, which we have carefully considered, is that appellant's husband and agent was not induced by representations made to him to sell the stock but acted on his own judgment and initiative. This being true the chancellor correctly denied the relief sought and dismissed the petition.

Judgment affirmed.